FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jun 05, 2026

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| Stasha H.,<br><br>    Plaintiff,<br><br> v.<br><br>COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION,<br><br>    Defendants. | NO. 4:25-CV-5117-TOR<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT are the parties' cross-motions for summary judgment (ECF Nos. 9 and 17). Plaintiff is represented by Chad Hatfield. Defendant is represented by Special Assistant Benjamin J. Groebner. This matter was submitted for consideration without oral argument. The Court has reviewed the administrative record and the parties' completed briefing and is fully informed. For the reasons discussed below, the Court **grants** Defendant's motion and **denies** Plaintiff's motion.

## JURISDICTION

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 1

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under §405(g) is limited: the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158-59 (9th Cir. 2012) (citing 42 U.S.C. § 405(g)).  "Substantial evidence" means relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted).  In determining whether this standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner.  If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).  Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* at 1111.  An error is harmless "where it is inconsequential to the [ALJ's]

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 2

ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(b).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 3

If the claimant is not engaged in substantial gainful activities, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. § 404.1520(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. § 404.1520(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  *Id.*

At step three, the Commissioner compares the claimant's impairment to several impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. § 404.1520(d).

If the severity of the claimant's impairment does meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity ("RFC"), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations (20 C.F.R. § 404.1545(a)(1)), is relevant to both the fourth and fifth steps of the analysis.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 4

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past ("past relevant work"). 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and work experience. *Id.* If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id.*

The claimant bears the burden of proof at steps one through four above. *Lockwood v. Comm'r of Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 5

work "exists in significant numbers in the national economy."  20 C.F.R. § 404.1560(c); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

Plaintiff filed an application for insurance disability benefits on March 1, 2017, alleging a disability onset date of May 5, 2013.  Tr. 15.  This application was denied initially and upon reconsideration, and Plaintiff requested a hearing.  *Id.*  A video hearing was held before an ALJ on August 28, 2019.  *Id.* The ALJ subsequently denied Plaintiff benefits on September 11, 2019.  Tr. 15-25.

On September 3, 2021, this Court remanded the case and ordered the ALJ to "reconsider the step two findings and Plaintiff's symptoms claims, and conduct a new sequential analysis, including a reassessment of the step five finding if necessary."  Tr. 637-638.  The Appeals Council remanded the case back to the ALJ on January 14, 2022.  Tr. 642-644.

The ALJ held a telephonic hearing on September 21, 2022.  Tr. 574. Plaintiff requested, through undersigned counsel, a closed period of disability ending April 16, 2021.  Tr. 577.  The ALJ denied Plaintiff's claim of disability on March 7, 2023.  Tr. 548-563.

The ALJ found that Plaintiff met the insured status requirements of Title II of the Social Security Act through December 31, 2026.  Tr. 550.  At step one, the ALJ found that Plaintiff had engaged in substantial gainful activity from April

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 6

2021 to the ALJ's date of decision, but noted Plaintiff had prior continuous 12-month periods where Plaintiff did not engage in substantial gainful activity.  Tr. 550-551.  At step two, the ALJ found that Plaintiff had a severe impairment consisting of functional movement disorder.  Tr. 551.  At step three, the ALJ found that Plaintiff's severe impairment did not meet or medically equal a listed impairment through the date of last insured.  Tr. 552.  The ALJ then determined that Plaintiff had the residual function capacity to perform a full range of light work under 20 CFR 404.1567(b) with the following exceptions:

> [Plaintiff] could not climb ladders, ropes, or scaffolds, and could frequently stoop, kneel, crouch, crawl, balance, and climb ramps and stairs; she could not have concentrated exposure to extreme cold or heat, or to hazards, such as unprotected height and moving mechanical parts; she could have only superficial contact with the public and coworkers; and she requires a routine, predictable work environment with no more than occasional changes and no fast-paced work.

Tr. 553-554.

At step four, the ALJ found that Plaintiff was unable to perform past relevant work.  Tr. 561.  At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, Plaintiff could perform jobs that exist in significant numbers in the national economy in a representative occupation such as a mail clerk, warehouse checker, and garment sorter.  Tr. 562-563.  The ALJ therefore concluded that Plaintiff was not under a disability from May 5, 2013, the alleged onset date, through March 7, 2023, the date of decision.  Tr. 563.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 7

On July 11, 2025, the Appeals Council declined Plaintiff's requests for exceptions to the ALJ's decision, (Tr. 521-524) making the ALJ's decision the Commissioner's final decision that is subject to judicial review.  42 U.S.C. § 405(g); 20 C.F.R. §§ 404.981.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability insurance benefits under Title II of the Social Security Act.  Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ property weighed the medical opinion of Howard Shapiro, M.D.;

2. Whether the ALJ properly considered the Listing of Impairments;

3. Whether the ALJ properly weighed Plaintiff's symptom testimony;

4. Whether the ALJ properly weighed the lay witness testimony; and

5. Whether the ALJ properly made a Step Five determination.

## DISCUSSION

**A. Medical Opinion of Dr. Shapiro**

Plaintiff contends that the ALJ improperly rejected the opinion of Dr. Shapiro.  Tr. 8-13.

As Plaintiff filed her claim on March 1, 2017, the regulations governing claims filed before March 27, 2017, apply to this case.  20 C.F.R. § 404.614.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 8

Under the applicable regulations, there are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted). Generally, the opinion of a treating physician carries more weight than the opinion of an examining physician, and the opinion of an examining physician carries more weight than the opinion of a reviewing physician. *Id.* In addition, the Commissioner's regulations give more weight to opinions that are explained than to opinions that are not, and to the opinions of specialists on matters relating to their area of expertise over the opinions of non-specialists. *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 9

may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (citing *Lester*, 81 F.3d at 830-831). The opinion of a nonexamining physician may serve as substantial evidence if it is supported by other independent evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

Dr. Shapiro testified at Plaintiff's prior hearing from August 2019 that Plaintiff had a non-severe impairment of hypothyroidism, facial tics that have occurred since 2013, and suffers from storms associated with confusion. Tr. 35. Dr. Shapiro also testified that Plaintiff had previously had an episode of facial numbness and tingling associated with a right sided facial droop that lasted about five days. Dr. Shapiro opined that Plaintiff's dystonia was a severe impairment and equaled Listing 11.02, but also acknowledged that it was a working diagnosis and that more genetic testing was needed. Tr. 36-37.

The ALJ gave very little weight to Dr. Shapiro's opinion in both the 2019 and 2023 decisions. In the 2019 decision, the ALJ noted that Dr. Shapiro conceded that no medical cause had been found for Plaintiff's dystonic symptoms and that the dystonia diagnosis was "grasping for a diagnosis." Tr. 23. The ALJ also accepted the portions of Dr. Shapiro's testimony consistent with Plaintiff's medical record but rejected Dr. Shapiro's opinion that Plaintiff should equal Listing 11.02 until more testing can be done to find the cause of Plaintiff's symptoms. Tr. 23.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 10

The ALJ concluded Plaintiff could not be found to equal a listing without a medically determinable impairment. *Id.*

The ALJ used the exact same reasoning in the 2023 decision, but additionally found that the opinion was inconsistent with the testifying medical expert, Vladimir Karpitskiy, at the 2022 remand hearing.  Tr. 560.  Moreover, the ALJ reasoned it was also inconsistent with the objective medical evidence, Plaintiff's course of treatment, activities of daily living, and her demonstrated ability to sustain SGA for the previous two years.  Tr. 561

Plaintiff contends the ALJ improperly rejected Dr. Shapiro's testimony that Plaintiff's impairments equaled Listing 11.02 for the same reasons that this Court had previously held as erroneous.  ECF No. 9 at 8.  Plaintiff also argues that Dr. Shapiro's opinion was not inconsistent with Dr. Karpitskiy's because he characterized the functional movement disorder as a psychiatric disorder outside of his expertise.  ECF No. 9 at 8-9.  Finally, Plaintiff contends that her improvement with cognitive behavior therapy and return to work supports her claim of disability for the closed period.  ECF No. 18 at 4-5.  Defendant responds that the ALJ properly rejected Dr. Shapiro's opinion with reference to specific evidence in the record.  ECF No. 17 at 8.

The Court did not previously address Plaintiff's challenge to the ALJ's evaluation of Dr. Shapiro's opinion in the 2019 decision.  Rather, the Court

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 11

remanded on the basis the ALJ erred at step two by failing to properly consider Plaintiff's neurological impairments.  Tr. 625.  This was reversable error as the ALJ confined his analysis only to mental limitations in subsequent steps and "summarily dismissed the medical expert opinion that Plaintiff met a listing at step three because '[he] cannot find that [Plaintiff] equals a listing without a medically determinable impairment.'"  Tr. 626.

Here, the ALJ did not summarily dismiss Dr. Shapiro's opinion, but identified undermining evidence.  The ALJ relied on a medical expert that specialized in neurology, Dr. Karpitskiy's opinion that Plaintiff demonstrated a psychiatric functional movement disorder rather than dystonia.  Tr. 580-582.  This is inconsistent with Dr. Shapiro's opinion that he did not believe Plaintiff's symptoms stemmed from a psychological basis, but was dystonia.  Tr. 36.  Moreover, while Plaintiff argues that she improved with cognitive behavior therapy prior to returning to work, as discussed below, Plaintiff did not submit any records demonstrating this improvement nor did Plaintiff herself provide testimony as such.

The Court finds that the ALJ provided specific and legitimate reasons supported by substantial evidence in giving little weight to Dr. Shapiro's opinion.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 12

**B. Listing of Impairments**

Plaintiff contends the ALJ erred by failing to conclude that Plaintiff's impairment equaled Listing 11.02. ECF No. 9 at 13-14.

An impairment is "medically equivalent to a listed impairment in appendix 1 if it is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 404.1526. Listing 11.02 describes epilepsy as "a pattern of recurrent and unprovoked seizures that are manifestations of abnormal electrical activity in the brain." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 11.02. The listing is met where a claimant suffers from epileptic seizures, either generalized tonic-clonic seizures or dyscognitive seizures, that persist despite adherence to a prescribed treatment for three consecutive months. *See id.* A generalized tonic-clonic seizure is characterized by a loss of consciousness, while a dyscognitive seizure is characterized by alteration of consciousness where "blank staring, change of facial expression, and automatisms (such as lip smacking, chewing or swallowing, or repetitive simple actions, such as gestures or verbal utterances) may occur." *Id.* The regulations further require "at least one detailed description of [the claimant's] seizures from someone, preferably a medical professional, who has observed at least one of [the claimant's] typical seizures." *Id.*

The ALJ concluded Plaintiff did not meet or equal Listing 11.02 because "[t]he medical evidence does not document a detailed description of a typical

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 13

seizure pattern with all associated phenomena occurring more than once a month in spite of at least three months of prescribed treatment, with daytime episodes or nocturnal episodes manifesting residuals affecting daytime activity." Tr. 553. The ALJ noted that Plaintiff's functional movement disorder did not consist of seizures and the record does not demonstrate that Plaintiff was ever prescribed antiepileptic medications. *Id.* Finally, the ALJ concluded that the frequency of Plaintiff's "alleged 'storms' is less than alleged and is not medically equal to the severity required by Listing 11.02." *Id.*

Plaintiff argues the ALJ erred by not properly addressing whether Plaintiff met or medically equaled Listing 11.02 and maintains that her neurological symptoms meet Listing 11.02 pursuant to Dr. Shapiro's opinion. ECF No. 9 at 14. Defendant argues that Plaintiff cannot simply assert that her impairments meet Listing 11.02 but must point to medical evidence demonstrating that her impairment equals all the listing criteria. ECF No. 17 at 3. Plaintiff replies that the record has numerous descriptions of Plaintiff's dystonia storms and the ALJ failed to explain how the frequency of these storms does not equal the monthly requirement of Listing 11.02. ECF No. 18 at 6.

The Court finds the ALJ's reasoning was substantially supported. First, Plaintiff argues that her functional movement disorder is medically equivalent to Listing 11.02 but does not explain how it is equal in severity to the criteria of

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 14

Listing 11.02, only in duration.  *Sullivan v. Zebley*, 738 F.3d 1172 (2013) ("For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to all the criteria for the one most similar listed impairment.").  Here, Plaintiff heavily relies on Dr. Shapiro's opinion, which was adequately discounted by the ALJ, and only cites to records that support Plaintiff's argument that the frequency of her episodes met Listing 11.02.  ECF No. 18 at 6.  However, the ALJ also noted a lack of the requisite "detailed description of a typical seizure pattern with all associated phenomena" among the medical evidence.  None of the records Plaintiff relies on provide such a description.  *See e.g.*, Tr. 330 (presented with uncontrollable twitching but with no altered mental status), 472 (reported dizziness and difficulty swallowing the day prior which had resolved), 475 (observed left sided facial twitching but alert and oriented with normal speech), 934 (left paranasal tics noted but observed as alert with normal focal deficit and normal gait and coordination), 421 (frequent and sometimes continuous spasms of face observed but noted as alert, oriented and fluent with clear speech).

Finally, as discussed below, the ALJ sufficiently discounted Plaintiff's testimony as to the frequency and severity of the storms she experiences.  The

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 15

Court does not find that the ALJ erred in finding Plaintiff did not equal Listing 11.02.

**C. Subjective Symptom Testimony**

An ALJ engages in a two-step analysis to determine whether a claimant's subjective symptom testimony can be reasonably accepted as consistent with the objective medical and other evidence in the claimant's record. Social Security Ruling ("SSR") 16-3p, 2016 WL 1119029, at *2. "First, the ALJ must determine whether there is 'objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.' " *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (quoting *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)). "The claimant is not required to show that her impairment 'could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.'" *Vasquez*, 572 F.3d at 591 (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted). General findings are insufficient; rather, the ALJ must identify what

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 16

symptom claims are being discounted and what evidence undermines these claims. *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why he or she discounted claimant's symptom claims). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

The ALJ is instructed to "consider all of the evidence in an individual's record," "to determine how symptoms limit ability to perform work-related activities." SSR 16-3p, 2016 WL 1119029, at *2. When evaluating the intensity, persistence, and limiting effects of a claimant's symptoms, the following factors should be considered: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. *Id*. at *7–8; 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 17

As an initial matter, the ALJ concluded that Plaintiff had waived the right to present testimony in support of her application for benefits under Title II by failing to appear at the September 21, 2022 hearing and failing to reply to the *Request to Show Cause for Failure to Appear*. Tr. 554. The ALJ then considered Plaintiff's testimony from the prior hearing held on August 28, 2019. *Id.*

The ALJ found Plaintiff's impairments could reasonably be expected to cause the alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record. Tr. 554.

The ALJ concluded that the medical evidence did not demonstrate that Plaintiff had "presented to medical providers throughout the relevant period in a debilitated state, demonstrating significant neurological deficits," and that the "pattern of objective findings throughout the record is overwhelmingly normal, with very few findings of neurological deficits, and no diagnostic workup suggesting any significant abnormalities." Tr. 558. The ALJ additionally noted that Plaintiff's pattern of past recorded statements were inconsistent with her disabling allegations, such as Plaintiff's tendency to make backward-looking statements rather than contemporaneous reports of debilitating "storm" occurrences. Tr. 559. The ALJ further found that Plaintiff's reports in the record of storms occurring every three to four months was less than the frequency alleged

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 18

in her disability claim. *Id.* Plaintiff argues that several treatment providers observed contemporaneous dystonia "storms." ECF No. 9 at 17. However, only two of the records cited note that Plaintiff was in an active "storm" that affected Plaintiff's ambulation and gait. Tr. 407, 442. This is not inconsistent with the ALJ's finding that there have been "few contemporaneous reports" of debilitating storms.

The ALJ also relied heavily on Plaintiff's failure to pursue treatment in discounting the severity of her alleged symptoms. Tr. 559. Plaintiff argues that the ALJ uses the same reasoning the Court previously rejected as insufficient. ECF No. 9 at 18-19. Indeed, like the previous decision, the ALJ reiterates here that a patient experiencing such debilitating symptoms would "aggressively pursue all available treatment," yet Plaintiff failed to do so despite being referred for psychological treatment. Tr. 22, 559. The Court previously concluded the ALJ had not substantially supported his finding that Plaintiff was "repeated[ly] encouraged [by] doctors to seek psychological care." Tr. 629. The ALJ now argues that regardless of how many times Plaintiff was referred for treatment, it is significant that Plaintiff never pursued any treatment. Tr. 559. The ALJ additionally notes that a record submitted since the previous hearing shows Plaintiff was referred to Swedish Neurology Movement Disorders in 2022 but failed to follow through. Tr. 559, 920.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 19

"A claimant's subjective symptom testimony may be undermined by 'an unexplained, or inadequately explained, failure to . . . follow a prescribed course of treatment.  While there are any number of good reasons for not doing so, a claimant's failure to assert one, or a finding by the ALJ that the proffered [sic] reason is not believable, can cast doubt on the sincerity of the claimant's pain testimony.'" *Trevizo v. Berryhill*, 871 F.3d 664, 679 (9th Cir. 2017) (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)).  However, it is well-established that an ALJ may not discredit a claimant's testimony on the ground that the claimant failed to pursue treatment which he or she could not afford.  *See Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1999) ("Although we have held that an unexplained, or inadequately explained, failure to seek treatment can cast doubt on the sincerity of a claimant's pain testimony, we have proscribed the rejection of a claimant's complaints for lack of treatment when the record establishes that the claimant could not afford it.") (internal citations, quotation, and alterations omitted).

Plaintiff did not provide any testimony at the 2022 hearing, but previously testified at the 2019 hearing that medical bankruptcy prevented her from seeking further treatment with a movement specialist, in addition to having a high insurance deductible of $5,000 or $10,000.  Tr. 43-44, 54.  Although Plaintiff admitted to not knowing what the actual deductible amount was.  Tr. 54.  The ALJ

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 20

concluded that Plaintiff did not put forward a convincing explanation for failing to pursue treatment in part because Plaintiff did not appear for the September 2022 hearing, and the ALJ was unable to further develop Plaintiff's testimony on the issue. Tr. 559. The ALJ also reasoned that Plaintiff's previous testimony was unconvincing as Plaintiff did not submit any evidence of medical bankruptcy and ultimately did not know what her deductible was upon further questioning. Tr. 559.

The Court previously found that the "ALJ's cursory dismissal of Plaintiff's explanation that she could not afford treatment simply because she had medical insurance, with no further investigation as to her testimony regarding bankruptcy, her ongoing medical expenses, or the out-of-pocket cost of specialized medical treatment, was not supported by substantial evidence." Tr. 632. Plaintiff argues that here, the ALJ again erroneously rejected Plaintiff's explanation for failing to pursue treatment more aggressively and notes that Plaintiff is not required to submit evidence of bankruptcy. ECF No. 9 at 18-19. The Court agrees that without the ALJ having further developed Plaintiff's testimony regarding her ability to pay, the ALJ's rejection of Plaintiff's testimony based on a failure to pursue treatment remains deficient. But the Court concludes any error was harmless as the ALJ adequately discounted Plaintiff's testimony on other grounds.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 21

The ALJ next found Plaintiff's daily activities inconsistent with her testimony of debilitating symptoms.  Tr. 560.  The ALJ noted that Plaintiff had full responsibility for the care of her children, was able to shop for groceries and prepare family meals, went outside daily, goes out alone, goes to the gym, and was able to drive.  Tr. 559.  The Court previously found that the ALJ did not offer a sufficient explanation as to how Plaintiff's claim that she was unable to function during storms was inconsistent with her self-reporting of the ability to engage in a wide array of activities when not experiencing dystonia "storms" several days per month.  Tr. 634.  This time around the ALJ made the same conclusion with additional explanation.

> Her many reports of "daily" or "every day" running are inconsistent with the notion that she is bedbound at times.  During the requested closed period of disability, she worked part-time as a preschool teacher, which is challenging, both physically and mentally.  These activities are not what one would expect from an individual who is debilitated as the claimant alleges herself to be.  While the claimant could call in sick to her part-time job, and her employer may have worked around her alleged schedule of "storms," some of her other admitted responsibilities are not so flexible.  Parenting, for example, does not involve the ability to call in sick.  Rather, childcare responsibilities are unrelenting, and the claimant has admitted she is fully responsible for the care of her children.

Tr. 560.

Plaintiff argues that the ALJ failed to identify what activities Plaintiff could perform during a storm period that undermines her disabling allegations and

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 22

improperly rejected her testimony based on her childcare activities.  ECF No. 9.

"Engaging in daily activities that are incompatible with the severity of symptoms

alleged can support an adverse credibility determination."  *Ghanim v. Colvin*, 763

F.3d 1154, 1165 (9th Cir. 2014).  Plaintiff reported in a 2017 function report that

she took her kids to school and otherwise cared for them on a daily basis unless she

was storming.  Tr. 219.  However, in the same report, Plaintiff also noted that she

drove her kids to activities, cooked, cleaned, and provided their daily care with no

help from anyone else.  *Id.*  "The ability to care for others without help has been

considered an activity that may undermine claims of totally disabling pain."

*Jennifer W. v. Kijakazi*, No. 4:20-CV-05234-MKD, 2022 WL 2834011, at *12

(E.D. Wash. May 19, 2022).  The ALJ therefore reasonably found that Plaintiff's

activities of daily living, particularly those related to childcare, undermined her

symptom claims.

Finally, the ALJ found that Plaintiff's ability to engage in SGA since April

2021 without medical records demonstrating medical improvement up until she

returned to work, "compels the conclusion that she was capable of working all

along."  Tr. 560.  Plaintiff argues that the ALJ's reasoning is disingenuous because

Plaintiff's counsel notified the ALJ during the 2022 hearing that records of

Plaintiff's improvement with cognitive therapy do exist, but that counsel was

unable to make contact with Plaintiff prior to the hearing to obtain a signature for

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 23

the release of the records.  ECF No. 9 at 20-21.  Plaintiff's argument is not particularly persuasive as counsel also conceded during the hearing that he was not sure such records even existed, and it does not appear that any additional records were submitted after the hearing or after the ALJ's decision was issued.  Tr. 580, 521.  Moreover, the ALJ noted that Plaintiff continued to report suffering from dystonia mere months before returning to SGA.  Tr. 560 (citing Tr. 846).  The Court finds that the ALJ's conclusion that Plaintiff returning to work without any medical records demonstrating improvement undermined her symptom testimony was substantially supported.

Overall, the ALJ sufficiently provided clear and convincing reasons supported by substantial evidence in discounting Plaintiff's symptom testimony.

**D. Lay Witness Testimony**

Plaintiff argues the ALJ improperly rejected the lay witness testimony of her husband, Jason Haynes, and work supervisor, Kelly Buchanan.  ECF No. 9 at 14-16.

An ALJ must consider the statements of lay witnesses in determining whether a claimant is disabled.  *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006).  Lay witness evidence cannot establish the existence of medically determinable impairments, but lay witness evidence is "competent evidence" as to "how an impairment affects [a claimant's] ability to work."  *Id.*;

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 24

*see also Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993) ("[F]riends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to her condition."). If a lay witness statement is rejected, the ALJ "'must give reasons that are germane to each witness.'" *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (citing *Dodrill*, 12 F.3d at 919). Inconsistency with other evidence in the record is a germane reason to discredit lay witness evidence. *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001).

The ALJ discounted Jason Haynes's questionnaire reporting that Plaintiff suffered from two to five seizures per month with each averaging two to five minutes because "he also admitted that the claimant had not been to the Emergency Department in the past year and was not taking any medication to treat her seizure symptoms." Tr. 561. The ALJ concluded that "[l]ittle weight is accorded to Mr. Haynes' statements, which echo the claimant's allegations, for the same reasons I find the claimant's allegations inconsistent with the evidence of record." Tr. 561.

The ALJ also rejected Ms. Buchanan's testimony that Plaintiff could only work part-time due to her debilitating disease on that basis that "Ms. Buchanan is not a physician" and "the record shows the claimant has returned to fulltime employment without the record documenting any commensurate improvement in her medical condition." Tr. 561.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 25

The Court finds the ALJ adequately rejected the lay witness testimony with reasons germane to each witness

### E. Step Five Determination

Plaintiff argues the ALJ failed to conduct an adequate analysis at step five by failing to consider a more complete hypothetical. ECF No. 9 at 21. If a claimant cannot perform his or her past relevant work, at step five the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 416.920(d)-(e). To do so, the ALJ may employ the testimony of a vocational expert. *Tackett,* 180 F.3d at 1100-01; *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2000). The ALJ's findings will be upheld if the weight of medical evidence in the record supports the hypothetical posed by the ALJ. *Martinez v. Heckler*, 807 F.2d 771, 774 (9th Cir. 1987); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony will qualify as substantial evidence if it is reliable. *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988).

Here, the hypothetical posed to the vocational expert asked the expert to consider a claimant with Plaintiff's age, education, work experience, and residual functional capacity to perform light work with the following additional limitations:

> [Plaintiff] could not climb ladders, ropes, or scaffolds, and could frequently stoop, kneel, crouch, crawl, balance, and climb ramps and stairs; she could not have concentrated exposure to extreme cold or heat, or to hazards, such as unprotected heights and moving mechanical

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 26

parts; she could have only superficial contact with the public and coworkers; and she requires a routine, predictable work environment with no more than occasional changes and no fast-paced work.

Tr. 64. The vocational expert testified that the hypothetical individual would be able to perform the following representative occupations: mail clerk, with approximately 100,000 jobs in the national economy; warehouse checker, with approximately 25,000 jobs in the national economy; and garment sorter, with approximately 50,000 jobs in the national economy. Tr. 562-563.

Plaintiff argues that the hypothetical failed to account for certain limitations, specifically her unscheduled absences occurring once or more per month. Having concluded the ALJ's findings with regard to Plaintiff's alleged impairments were all supported by substantial evidence, the Court concludes the ALJ carried his burden to prove Plaintiff retains the residual functional capacity to perform certain jobs in the national economy. The ALJ's conclusion is supported by substantial evidence.

//

//

//

//

//

//

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 27

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment (ECF No. 9) is **DENIED**.

2. Defendant's Motion for Summary Judgment (ECF No. 17) is

   **GRANTED**.

The District Court Executive is directed to enter this Order, enter judgment accordingly, furnish copies to counsel, and **close the file**.

DATED June 5, 2026.



THOMAS O. RICE
United States District Judge

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 28